545 A.2d 1383

**H. Foster WALTON, III and Gertrude R. Gautier, Appellants,**

**v.**

**PHILADELPHIA NATIONAL BANK, Gateway Foods, Inc. and Gateway Foods of Pennsylvania, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Feb. 4, 1988.

Filed July 22, 1988.

---

Joseph E. Greene, Jr., King of Prussia, for appellants.

Michael J. Collard, Philadelphia, for Gateway, appellees.

Before BECK, KELLY and JOHNSON, JJ.

KELLY, Judge:

This is an appeal by plaintiffs, H. Foster Walton, III and Gertrude R. Gautier (hereinafter "appellants"), from the order of June 23, 1987, directing appellee, Philadelphia National Bank (hereinafter "PNB"), to release funds held in escrow to appellee, Gateway Foods, Inc. (hereinafter "Gateway"). We vacate and remand.

A summary of the facts which have led to the instant action is as follows. Gateway acquired Reeves, Parvin & Co. (hereinafter "RPCO") pursuant to a merger agreement in January of 1986.[1] Proposals for the acquisition of RPCO by Gateway required each RPCO stockholder with more than a five percent (5%) interest in RPCO stock, determined prior to the sale of the corporation, to indemnify Gateway for breach of any representations, warranties, or covenants. To avoid personal stockholder indemnification, RPCO directors proposed the establishment of a $150,000 escrow account from which any claims by Gateway could be paid. Gateway accepted this proposal. PNB was chosen to act as escrow agent under the terms of the agreement reached by the parties.

On December 23, 1986, Gateway mailed a Notice of Claim for funds held in the escrow account pursuant to the terms of the escrow agreement.[2] Gateway mailed "courtesy copies" of its Notice of Claim to appellants and the attorney representing RPCO. Pursuant to the agreement, PNB mailed copies of the Notice of Claim to the appellant stockholder representatives by certified mail on December 31,

1. Reeves, Parvin & Co. merged with Gateway's subsidiary, Gateway Foods of Pennsylvania, Inc.

2. Gateway asserted two claims of indemnification by RPCO totalling $283,549.86, alleging that RPCO failed to fairly and accurately represent its financial condition.

1986; Walton received a copy on January 6, 1987, and Gaudier received a copy on January 7, 1987. Appellants mailed notices of dispute to PNB on January 14, 1987. PNB received the notices on January 20, 1987; [3] the escrow agent found that the notices of dispute were untimely.

On February 5, 1987, appellants filed an action in equity against the appellees seeking to enforce their rights under the escrow agreement. Appellants sought a determination by the trial court that the notices of dispute filed by appellants with PNB were timely filed within the terms of the escrow agreement. Appellants further sought to restrain the escrow agent, PNB, from releasing funds held in escrow to Gateway or Gateway Foods of Pennsylvania, Inc. The court granted appellants' petition for a preliminary injunction against distribution of the escrowed funds.

A hearing was held on February 27, 1987.[4] On April 14, 1987, the trial court issued a decree nisi, directing PNB to release the funds held in escrow to appellee, Gateway. Exceptions were filed and denied and a final decree dated June 23, 1987, was entered on the docket on June 26, 1987. The instant appeal followed.

## I.

Appellants' primary contention on appeal is that the trial court erred in finding appellants' notices of dispute to Gateway's claim for escrow funds to be untimely pursuant to the language of the escrow agreement. Appellants argue that the court failed to ascertain the intention of the parties to the contract, thereby misconstruing the contract and further failed to find appellees estopped from claiming the notice to be untimely.

■ First, however, appellants Gautier and Walton argue that appellees are estopped from claiming that notice of

3. The bank was closed not only Saturday and Sunday, January 17, 1987, and January 18, 1987, but also on Monday, January 19, 1987, Martin Luther King Day.

4. By agreement of the parties, the trial on this matter was consolidated with the hearing on the preliminary injunction.

disputes sent to PNB were untimely. Appellants argue that Mr. David Fontello, an officer in the Corporate Trust Department at PNB, the escrow agent, and administrator of the escrow account between Gateway and RPCO, communicated to stockholder representative Gautier, upon her inquiry, that based on his interpretation of the contract, Gautier had ten days following the date that the Notice of Claim was received by her (January 7, 1987) in which to place her Notice of Dispute in the mail to PNB. Gautier allegedly relied upon this interpretation and placed her Notice of Dispute in the mail on January 14, 1987, within the ten-day period. Appellants allege that appellees are now bound by appellants' detrimental reliance pursuant to the doctrine of estoppel.

Pa.R.A.P. 302(a) states:

(a) **General rule.** Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.

"The doctrine of waiver has become firmly entrenched in Pennsylvania law and it is clear that on appeal a new and different theory of relief may not be successfully advanced for the first time." *Morgan v. Sbarbaro*, 307 Pa.Super. 308, 453 A.2d 598 (1982) (citing cases). We find no evidence in the record that appellants ever raised a claim of estoppel in the court below. We therefore find this contention waived.[5] Consequently, this Court shall address appellants' primary contention on appeal.

■ The scope of review of this Court has been set forth as follows:

The scope of appellate review of a decree in equity is particularly limited and such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. *Daley v. Hornbaker*, 325 Pa.Super. 172, 472 A.2d 703 (1984); *Lynch v. Hook*, 298 Pa.Super.

---

**5.** Because this contention has been waived on appeal, we need not scrutinize appellants' election to raise this claim as within the theory of promissory estoppel rather than equitable estoppel. *See Paul v. Lankenau Hospital, et al.*, 375 Pa.Super. 1, 543 A.2d 1148 (1988).

27, 444 A.2d 157 (1982). The test is not whether we would have reached the same result on the evidence presented, but whether the judge's conclusion can be reasonably drawn from the evidence. *In re Estate of Tippins*, 487 Pa. 107, 408 A.2d 1377 (1979); *Hoffman v. Gekoski*, 250 Pa.Super. 49, 378 A.2d 447 (1977).

> \* \* \* \* \* \*

> The findings of the chancellor will not be reversed unless it appears that he clearly abused his discretion or committed an error of law. [*Frowen v. Blank*, 493 Pa. 137, 425 A.2d 412 (1981).]

*Lombardo v. DeMarco*, 350 Pa.Super. 490, 495, 504 A.2d 1256, 1258 (1985). We shall therefore set forth the findings of the trial court, review the evidence and determine whether the conclusion drawn by the court below was a reasonable one.

## II.

First, we shall set forth the relevant portions of the escrow agreement in question.

3. *Release and Disbursement of Amounts in Escrow Account.*

The amounts in the Escrow Account from time to time shall be released and disbursed by the Escrow Agent in the manner and under the circumstances hereinafter specified:

(a) Gateway may at any time and from time to time prior to February 1, 1988 furnish to the Escrow Agent a notice, substantially in the form of Exhibit A attached hereto, with blanks appropriately completed, to the effect that Gateway is asserting one or more claims for indemnification by RPCO in amounts exceeding, on a cumulative basis, $25,000. Any such notice shall contain a brief description of each asserted claim for indemnification, including a description of the circumstances giving rise to the right of indemnification, and the amount of the indemnity payment in respect of each such claim to which Gateway asserts entitlement. Upon receipt of any such

notice (a 'Notice of Claim'), the Escrow Agent shall examine the same for substantial compliance with the requirements of this Agreement and shall promptly thereafter *furnish* a copy of such notice to RPCO and both Stockholder Representatives. *If the Escrow Agent shall not have received from either Stockholder Representative, prior to the tenth calendar day following the date on which such notice was delivered to the Stockholder Representatives,* a written notice of the type contemplated by subsection (b) of this paragraph 3, the Escrow Agent shall withdraw from the Escrow Fund and pay to Gateway by check an amount equal to the lesser of (i) the aggregate of the claims asserted in the Notice of Claim or (ii) the balance in the Escrow Account on the date of payment. Any claim set forth in a Notice of Claim that is not specifically disputed in a written notice from either or both of the Stockholder Representatives of the type contemplated by subsection (b) of this paragraph 3 shall be paid by the Escrow Agent in accordance with the preceding sentence, even though a Notice of Dispute might otherwise have been *received* by the Escrow Agent with respect to other claims set forth in the Notice of Claim.

(b) *The Stockholder Representatives may deliver to the Escrow Agent, at any time after the Stockholder Representatives' receipt of a Notice of Claim and prior to the tenth calendar day following such receipt,* a written notice, in substantially the form of Exhibit B hereto with blanks appropriately completed, to the effect that either or both of the Stockholder Representatives dispute the fact or amount of any one or more of the claims asserted in the Notice of Claim. In the event the Escrow Agent shall *receive* any such notice from either Stockholder Representatives [sic] (herein a 'Notice of Dispute') within such ten day period, the Escrow Agent shall (i) examine the same for substantial compliance with the requirements of this Agreement, (ii) promptly thereafter furnish a copy of such Notice to Gateway, and (iii) refrain from making any disbursement of any amount disputed in the Notice of Dispute from the Escrow Fund

until the claims and disputes described in the Notice of Claim and Notice of Dispute have been resolved. For purposes of this subsection (b), the dispute of a claim shall be deemed to be resolved upon the occurrence of any of the following events:

(1) Gateway and the Stockholder Representatives execute and deliver to the Escrow Agent a written agreement setting forth the resolution of such claim, in which case the Escrow Agent, upon receipt of such agreement, shall withdraw from the Escrow Fund and pay to Gateway by check an amount equal to the amount to which Gateway is entitled under such agreement;

(2) Gateway and both Stockholder Representatives have not executed and delivered to the Escrow Agent a written agreement setting forth the resolution of such claim, and neither Stockholder Representative has responded to the notice of and demand for arbitration filed by Gateway within the time period set forth in such notice, in which case, upon the expiration of such time period, and within ten (10) days after receipt by the Escrow Agent of an affidavit from Gateway certifying that it has not received any response by either Stockholder Representative, the Escrow Agent shall withdraw from the Escrow Fund and pay to Gateway by check an amount equal to the amount of such claim; or

(3) A final judgment is entered by the arbitrators in the arbitration proceeding regarding such claim, in which case either party may give notice to the Escrow Agent by delivering to the Escrow Agent and the other party a copy of such judgment, and within ten (10) days after the receipt thereof by the Escrow Agent, the Escrow Agent shall withdraw from the Escrow Fund and pay to Gateway by check an amount equal to the amount to which Gateway is entitled under such judgment.

(Escrow Agreement at 3–5, R.R. 28a–31a).

12. *Notices. Except as otherwise specified herein, all notices* or other communications required or permitted to be given under this Escrow Agreement shall be in

writing and *shall be considered delivered in all respect, when it has been delivered by hand or mailed by certified mail,* return receipt requested, first class postage prepaid, addressed as follows:

\* \* \* \* \* \*

(Escrow Agreement at 15, R.R. 40a). (Emphasis added).

In the Discussion section of its opinion dated April 14, 1987, the court below stated that the "[l]anguage in the Escrow Agreement *clearly* sets forth the procedure by which a notice shall be considered delivered." (Trial Ct.Op. at 6). (Emphasis added). The court continued, stating:

Despite the express language in the Escrow Agreement, plaintiffs disingenously [sic] argue that they were entitled to deliver their Notice of Dispute within ten (10) days of *actual receipt* of the Notice of Claim. They would change the written terms of the Agreement.

(Trial Ct.Op. at 7). (Emphasis in original).

The trial court determined that appellants, Walton and Gaudier, had ten (10) days from December 31, 1986 (the date that PNB mailed copies of Gateway's Notice of Claim to appellants) in which to deliver a Notice of Dispute to appellee, PNB. The trial court thus concluded that in order to be timely filed, appellants must have placed their Notices of Dispute in the mail by January 9, 1987. Stockholder Representatives Walton and Gaudier mailed their Notices of Dispute on January 14, 1987, five days past the deadline mandated by the court.

### III.

An escrow agreement is a contract and is to be interpreted according to contract principles. In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished. *Village Beer and Beverage, Inc. v.*

*Vernon D. Cox and Co., Inc.,* 327 Pa.Super. 99, 475 A.2d 117 (1984). The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. *Steuart v. McChesney,* 498 Pa. 45, 444 A.2d 659 (1982). However, as our Supreme Court stated in *In re Herr's Estate,* 400 Pa. 90, 161 A.2d 32 (1960), "where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." 161 A.2d at 34. (Citations omitted). "If there is not an actual or literal understanding of the contractual obligation, the contract is considered to be that which a reasonable person in similar circumstances would understand the contract to be." *State Automobile Insurance Association v. Anderson,* 365 Pa. Super. 85, 89, 528 A.2d 1374, 1376 (1987).

The task of interpreting a contract is generally performed by the court rather than by a jury and the goal of that task is to ascertain the intent of the parties as manifested by the language of the written instrument. *Standard Venetian Blind Co. v. American Empire Ins. Co.,* 503 Pa. 300, 469 A.2d 563 (1983). As stated in *Kroblin Refrigerated Xpress, Inc. v. Pitterich,* 805 F.2d 96 (3d Cir.1986):

> Determining whether contract terms are clear or ambiguous is a question of law, *Mellon Bank, N.A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980), and review of this issue is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 102 (3d Cir.1981). In making the ambiguity determination, a court must consider the words of the argument, alternative meanings suggested by counsel, and extrinsic evidence offered in support of those meanings. *Mellon Bank,* 619 F.2d at 1011.

*Kroblin,* at 101 (3d Cir.1986). Not only did the trial court in this instance fail to provide a full review of the terms of the agreement regarding the ambiguity and the intention of the parties, but the court failed to even recognize the existence

of an ambiguity. We are thus unable to agree with the findings of the trial court.

## IV.

 Our review of the escrow agreement reveals that an ambiguity does in fact exist. Paragraphs 3(a) and 3(b) contain references to the ten (10) day period within which either or both of the Stockholder Representatives must file a notice of dispute with the escrow agent in response to a notice of claim to escrow funds. Paragraph 3(a) provides that the Stockholder Representative's response must occur "prior to the tenth calendar day following the date on which such notice was *delivered* to the Stockholder Representatives." (Escrow Agreement at p. 4). (Emphasis added). Paragraph 3(b), in its reference to the same ten-day period, states that the Stockholder Representative may deliver a notice of dispute, "at any time after the Stockholder Representative's *receipt* of a Notice of Claim and prior to the tenth calendar day following such *receipt.*" (Agreement at 4–5). (Emphasis added). Paragrah 3(b) continues, "[i]n the event the Escrow Agent shall *receive* any such notice from either Stockholder Representative ... within such ten-day period...." (Emphasis added).

Both sections make reference to the same ten-day period. The ambiguity exists in the interpretation of this ten-day time period and its correlation to when the Notice of Dispute must be "delivered" and/or "received." In reading paragraphs 3(a) and 3(b) in conjunction with paragraph 12, which attempts to define the term "delivered," this ten-day period can be interpreted as either ten days from the date the escrow agent placed the notice of claim in the mail or ten days from the date the Stockholder Representative physically received the notice of claim, depending on which paragraph of the escrow agreement one reads. The presence of this ambiguous language is inconsistent with the trial court's finding that the language of the agreement "clearly sets forth" the procedure for delivery of notices. Although the meaning may seem clear upon inspection of an individual paragraph of the escrow agreement, a written

contract should be construed as a whole. *Stern v. Vic Snyder, Inc.*, 325 Pa.Super. 423, 473 A.2d 139 (1984). As a whole, we find the language of this escrow agreement to be ambiguous.

 A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385 (1986). This Court may determine the existence of an ambiguity as a matter of law, whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact. Where the words used in a contract are ambiguous, the surrounding circumstances may be examined to ascertain the intent of the parties. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987); *allocatur denied*, 536 A.2d 1331.

 Although the pleadings of the parties clearly denote variant interpretations as to the meaning of "delivered" in the many contexts it is used throughout the agreement, there is nothing of record to indicate that the trial court attempted to learn the intent of the parties as to the interpretation of this ambiguity.[6] It thus remains the duty of the trier of fact to resolve the ambiguity by ascertaining the intent of the parties entering into the agreement. We therefore hold that the trial court erred in ignoring the presence of ambiguous language and interpreting the contract without acquiring testimony on the record as to the intent of the parties in the drafting of the escrow agreement.[7]

6. The sole notes of testimony of the hearing held February 27, 1987 do not relate to the intention of the parties regarding the interpretation of the language of the agreement, but only summarize the events which led to this action.

7. This Court notes that the Final Decree of June 23, 1987 reflects that the trial court "heard argument via a telephone conference call on June 15, 1987." There is no indication that this call was transcribed so as to preserve this argument for our review.

## CONCLUSION

The trial court erred in failing to find the terms of the Escrow Agreement ambiguous and inconsistent, in giving no effect to the provisions of paragraph 3(b) of said agreement and in failing to consider the intention of the parties.

Accordingly, we vacate the final decree of June 23, 1987 and remand to the trial court for an evidentiary hearing in order to ascertain the intent of the parties and resolve the obvious ambiguity present in the language of the escrow agreement. Appellants' claim of estoppel is waived. Jurisdiction is relinquished.