Thaddeus A. OSIAL, Jr., an individual, Appellee,

v.

Virginia I. COOK, an individual, Appellant.

Superior Court of Pennsylvania.

Submitted March 25, 2002.

Filed June 27, 2002.

Loraine S. Tabakin, Pittsburgh, for appellant.

Deborah A.L. Iwanyshyn, Allison Park, for appellee.

Before JOHNSON, KLEIN and BROSKY, JJ.

BROSKY, J.

¶ 1 Appellant, Virginia I. Cook, appeals from the order entered May 2, 2001 entering judgment in favor of Appellant in connection with a marital settlement agreement that had previously been entered as a consent order of court. Appellant alleges errors of law and abuse of discretion in regard to the award. After careful review, we affirm in part, vacate in part and remand.

¶ 2 The trial court has provided an apt summary of the occurrences out of which this action arises:

> The parties were married on May 29, 1976 and separated on October 12, 1996. A divorce decree was entered on June 22, 2000. Equitable distribution was resolved through entry of a consent order dated May 12, 2000 (the "Consent Order"). Among other things, that order established a "division ratio" of 58/42, with 58% of the assets subject thereto going to Wife and 42% going to Husband. Incorporated by reference in the Consent Order was a Joint Stipulation of Counsel (the "Joint Stipulation") that was intended to identify and establish a value for all parties' "substantial marital assets." The value of those assets was more than $2.5 million.

> Approximately 98% of the parties' assets were distributed according to the Consent Order. However, Wife filed a Motion to Reduce Equitable Distribution Award to Judgment because she believed she had not received all that was owing to her. After a one-day hearing, the [c]ourt entered, on May 2, 2001, the order from which [Appellant]'s appeal was taken (the "Judgment Order"). That order entered judgment against Husband in favor of wife in the amount of $37,181, including statutory interest in the amount of $4,200 and counsel fees of $2,000 in favor of wife.

Trial Court Opinion, 12/11/01, at 1–2. This appeal followed.

¶ 3 Appellant raises the following issues on appeal:

I. Whether the court commit[ted] an error of law and abused its discretion in entering judgment on an award of equitable distribution in the amount of $37,181 (including post-award pre-judgment interest on $4,200) rather than $62,389.59.

II. Whether the court erred as a matter of law and abused its discretion when it calculated statutory interest on the award.

III. Whether the court abused its discretion in its award of counsel fees.

Brief for Appellant, at 8.

¶ 4 Appellant first contends that the Court impermissibly modified the award stipulated to by consent of the parties. Her chief claim is that the court modified the award "to make it a 58%/42% split of all liquid assets totaling $1,218,114, when in fact, the award was a 58%/42% split of more than 50 individual assets whose values were individually stipulated to by the parties, and which when totaled, had a value of $1,194,505.20 per the stipulation." Brief for Appellant, at 11, 12. She fur-

ther argues that the court modified the stipulation as to the Treasury account and AllAmerican Life Insurance Policy. She argues that the court was without jurisdiction to modify the decree more than 30 days after its entry.

¶ 5 We note that our standard in reviewing the propriety of equitable distribution awards is broad: we will not disturb a trial court's determinations absent an abuse of discretion, that is, if the trial court failed to follow proper legal procedures or misapplied the law. Nor will we usurp the trial court's duty as factfinder. *Verholek v. Verholek,* 741 A.2d 792 (Pa.Super.1999) (*en banc*), *appeal denied,* 563 Pa. 665, 759 A.2d 388 (2000). The test in any equity matter is not whether we would have reached the same result on the evidence presented, but whether the judge's conclusions can be reasonably drawn from the evidence. *Lombardo v. De Marco,* 350 Pa.Super. 490, 504 A.2d 1256, 1258 (1985). Where a reading of the record can be said to reflect the conclusions reached by the lower court sitting in equity, we cannot substitute our judgment for that of the lower court. *Id.*

¶ 6 It is true that, absent fraud or extraordinary cause, the trial court's broad discretion to modify a divorce decree is lost if the court fails to act within 30 days. *Justice v. Justice,* 417 Pa.Super. 581, 612 A.2d 1354, 1357 (1992), *appeal denied,* 533 Pa. 635, 621 A.2d 581 (1993). However, in the present case Appellant brought an action to reduce a consent order to judgment for purposes of enforcement.

¶ 7 In Pennsylvania, a consent decree in an equity action is not considered a legal determination by the courts but is an agreement between the parties. *Penn Township v. Watts,* 152 Pa.Cmwlth. 359, 618 A.2d 1244 (1992). The rule is that, where the parties enter into a decree in equity by consent, it is binding upon the parties until *they* choose to amend it. *Id.* Essentially it is a contract with the same binding effect as a final decree rendered after a full hearing on the merits. *Id.*

¶ 8 The central question presented concerns the effects of the parties' agreement on the equitable distribution issues. In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. *Lyons v. Lyons,* 401 Pa.Super. 271, 585 A.2d 42, 45 (1991). A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake. *Penn Township, supra* at 1247.

¶ 9 It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. *Lyons v. Lyons, supra.* When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence. *Id.*

¶ 10 When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding. *Creeks v. Creeks,* 422 Pa.Super. 432, 619 A.2d 754, 756 (1993). The court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation. *Id.* When the terms of a written contract are clear, this Court will not re-write it or give it a construction in conflict with the accepted and plain meaning of the language used. *Id.* Conversely, when the language is ambiguous and the intentions of the parties cannot be reasonably ascertained from the language of the writing alone, the parol evidence rule does

not apply to the admission of oral testimony to show both the intent of the parties and the circumstances attending the execution of the contract. *Id.*

¶ 11 A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Walton v. Philadelphia National Bank,* 376 Pa.Super. 329, 545 A.2d 1383, 1389 (1988). The court must determine as a question of law whether the contract terms are clear or ambiguous. *Id.* When acting as the trier of fact, the court also resolves relevant conflicting parol evidence as to what was intended by the ambiguous provisions, examining surrounding circumstances to ascertain the intent of the parties. *Id.*

¶ 12 In reviewing the propriety of the trial court determination, it is essential to keep in mind the manner in which this case was presented to the trial court. As the trial court concluded, the parties' May 12, 2000 agreement clearly establishes what it refers to as "the division ratio", a formula to liquidate marital assets covered by the agreement and "divide the proceeds on the basis of a 58%/42% division with 58% going to wife and 42% going to husband." Consent Order of Court, 05/12/00, at ¶ 4. Paragraph 10 of the consent order expressly provided that, "[t]he remaining marital assets, which are detailed on the attached Amended Joint Stipulation which is incorporated herein and made a part hereof, shall be divided according to the division ratio." Consent Order of Court, 05/12/00, at ¶ 10. Express adjustment provisions were placed in the agreement "to achieve the ratio with respect to marital assets," and a provision was included to "equalize to the division ratio" by offset in the event any marital assets "were depleted by the parties for anything but agreed upon marital purposes post-separation." Consent Order of Court, 05/12/00, at ¶¶ 8, 9.

¶ 13 When the parties appeared before the court, the bulk of the assets, valued at $2.5 million, had been distributed according to the consent order. At this point, Appellant was asking the court to reduce to judgment the relatively small amount of the consent order that was in the husband's control but was due and owing to wife and had not been paid.

¶ 14 The court found that, separate from the retirement and fixed assets, the liquid assets totaled $1,218,114 and that the Appellant would thus need to receive $706,506 in order to achieve her 58% of the ratio. Having found that $657,320 of this amount had already been distributed to Appellant, the court calculated the balance due to Appellant in order for her to receive the 58% ratio.

¶ 15 Appellant argues that the trial court should have distributed the proceeds of the remaining assets by applying the division ratio individually to the stipulated values and exactly as they were stipulated. This approach would result in Appellant receiving a larger net sum in distribution, and consequently a larger net division ratio than the prescribed 42%/58% ratio. Appellant thereby suggests that the court was obligated to view the liquid asset distribution with blinders, focusing not on the entire agreement, but on the stipulation provision alone. We do not agree.

¶ 16 Rather, after reviewing the provisions of the consent order, we find that the court's comprehensive approach to distribution in accordance with the division ratio was supported by the evidence. We therefore find no error or abuse of discretion in the court's conclusion as to the appropriate approach for distribution.

¶ 17 However, we note that there is an apparent inconsistency in the court's

application of this conclusion. In order to arrive at the final distribution balance, the court offset distributions in several instances. Our review leads us to conclude that the court's decision to offset and its calculations were supported by the record in all but one case. The trial court found that while most of the interest earned on the Treasury Account was properly credited to other accounts that had already been distributed, some interest could not be accounted for. While we find that the trial court acted properly in using offset to credit the missing funds to Appellant, it was inconsistent for the trial court to choose to award the entire balance of this unaccounted for interest to Appellant by offset. This interest should have been subjected to the division ratio because, as the trial court notes, this was "more than she was entitled to under the division ratio." Although we might correct this error ourselves, we think the better course is to remand for the trial court to redetermine Wife's proper share of the interest.

¶ 18 Appellant next contends that she was entitled to interest from the date of the consent order and that the trial court acted improperly by computing statutory interest starting three months after that date. We agree.

¶ 19 Pennsylvania law provides for legal interest on debt from the date of the verdict or award as follows:

> Except as otherwise provided by another statute, a judgment for a specific sum of money shall bear interest at a lawful rate from the date of the judgment, if the judgment is not entered upon a verdict or award.

42 Pa.C.S.A. § 8101. Thus the general rule is that a plaintiff is entitled to interest on a judgment from the date of the verdict, and for purposes of computing interest, judgment and verdict are synonymous. *Kessler v. Old Guard Mutual Insurance*

*Company,* 391 Pa.Super. 175, 570 A.2d 569, 571 (1990). And, we have found this statute and rule applicable to awards made in the context of a divorce proceeding. *See Musko v. Musko,* 714 A.2d 1076 (Pa.Super.1998).

¶ 20 In the instant case, the trial court invoked equity powers to claim exception to this rule. It based this decision on its conclusion that the consent order was not for a "specific sum of money". Neither the trial court nor Appellee cite any precedent in this Court to support this position.

¶ 21 We have long held that statutory interest is a matter of right where damages are ascertainable by computation, even though a bona fide dispute exists as to the amount of the indebtedness. *Palmgreen v. Palmer's Garage, Inc.,* 383 Pa. 105, 117 A.2d 721 (1955). In *Palmgreen,* our Supreme Court held that the parties' stipulation of compensation damages in a contract case provided an adequate basis from which damages could be ascertained by computation. *Id.* Accordingly, the plaintiffs were entitled to interest from that time. *Id.*

¶ 22 More recently, in *Kessler,* we found stipulations relevant to our decision to apply Section 8101 interest from the date of verdict. *Kessler, supra. Kessler* was an insurance case in which the parties had stipulated that the replacement cost of the real estate improvements at issue was $318,000. Despite this stipulation, the jury returned a verdict in favor of the insureds for $74,000, with $24,000 of this being personal property losses not accounted for by the stipulations. Consistent with the stipulations in the case, the court determined that the correct amount of loss was $342,000 (parties' stipulation plus the $24,000 personal property loses found by the jury) and entered judgment n.o.v. in favor of the insureds. As part of its judg-

ment, the court included Section 8101 post-judgment interest at the rate of six (6%) percent per annum, payable thereon *from the date of the verdict. Id.* We affirmed, reasoning as follows:

> Our holding is supported by trial court decisions which have held uniformly that in personal injury actions in which the amount of the verdict is reduced by remittitur, the interest begins to run on the reduced amount from the date of the original verdict. It would seem to follow logically that where the amount of a verdict has been corrected upward by the trial court to reflect the correct amount due, interest should begin to run on the correct amount from the date of the verdict. *This is particularly so where, as here, the amount is increased to reflect the parties' stipulation regarding the amount owed.*
>
> We conclude, therefore, that the plaintiff-insureds are entitled to recovery post-judgment interest calculated on the amount of $342,000 from June 2, 1983 the date of the verdict, until the date of payment, reduced by the amount of post-judgment interest already paid.

*Kessler, supra* at 573 (citations omitted and emphasis added).

▇▇▇▇▇ ¶ 23 The role that stipulations played in these cases is not surprising. The election by parties to make stipulations of fact are given great deference in our courts generally:

> A stipulation is a declaration that the fact agreed upon is proven. A valid stipulation must be enforced according to its terms. Parties may by stipulation resolve questions of fact or limit the issues, and, if the stipulations do not affect the jurisdiction of the court or the due order of the business and conve-

nience of the court they become the law of the case.

*Commonwealth v. Rizzuto,* 566 Pa. 40, 777 A.2d 1069, 1088 (2001); *quoting Parsonese v. Midland National Insurance Company,* 550 Pa. 423, 706 A.2d 814, 815 (1998).

¶ 24 Given the great deference our Courts have accorded stipulations and the fact that in the present case, computation of a specific sum of money could clearly be ascertained by computation based on the stipulated values and the distribution ratio, we find that the court erred when it failed to calculate statutory interest from the date of the consent order.

▇▇▇ ¶ 25 Finally, Appellant contends that the court abused its discretion in determining the amount of its award of counsel fees. Appellant avers that she is entitled [1] to $5,000 in additional counsel fees incurred in seeking a QDRO, an $80,000 injunction, and the judgment. The trial court awarded $2,000 in counsel fees.

▇▇▇ ¶ 26 Where a party has failed to comply with an order of equitable distribution, the court may award counsel fees. 23 Pa.C.S.A. § 3502. To determine whether to award counsel fees, the court should consider the parties' incomes, assets, expenses, and future earning capacity. *Endy v. Endy,* 412 Pa.Super. 398, 603 A.2d 641 (1992). In the instant case, the trial judge recognized that "Appellant received many hundreds of thousands of dollars from the marital estate" and "had more than enough money to pay her counsel fees." Trial Opinion, at 7. Based on the husband's dilatory conduct, the court nonetheless granted $2,000 in counsel fees. We uphold the trial court's award, finding no abuse of discretion. Appellant's challenge therefore fails.

---

1. "... the Wife is entitled to more than $2,000 in counsel fees where her lawyer produced $77,388 in payments on the award." Brief for Appellant, at 24.

¶ 27 Accordingly, we affirm the portion of the trial court's order awarding counsel fees, but vacate that part of the order awarding equitable distribution, including statutory interest, and remand for the trial court to redetermine Wife's proper share of the Treasury Account interest and redetermine the proper distribution based thereon, and recalculate statutory interest consistent with this decision.

¶ 28 Affirmed in part, vacated in part, and case remanded. Jurisdiction is relinquished.