**Arsenal Inc. v. Armada Transportation Group Ltd.**

236

*James C. Dalton, and John K. Fiorillo*, for plaintiff.

*Linda M. Hee, John F. Thomas, Jr. and Allen B. Dubroff,* for defendants.

GLAZER, *J.*, Sept. 8, 2014—

FINDINGS-OF-FACT AND CONCLUSIONS-OF-LAW

1. Plaintiff, Arsenal, Inc., d/b/a/ Arsenal Associates ("plaintiff or "Arsenal"), is a Pennsylvania entity which owns real property known as the Arsenal Business Center, in Philadelphia, Pennsylvania.

2. Defendants Armada Transportation Group Limited ("Armada") and Tribute Transportation Company ("Tribute"), are entities engaged in the limousine transportation business with an address in Philadelphia, Pennsylvania.

3. Profile Limousine Service, Inc., d/b/a Profile

Transportation ("Profile"), a non party in the instant action, is a New Jersey company also engaged in the limousine transportation trade.

4. At all times relevant to this action, Mr. Philip E. Spitzer ("Spitzer"), a non-party herein, was "president," "treasurer, secretary," and "master of all trades" of profile.[1]

5. On May 5, 1999, Arsenal and Profile executed a "lease agreement" whereby profile agreed to lease specific premises within the Arsenal Business Center.[2] The lease agreement contained a warrant of authority enabling Arsenal to confess judgment against profile in the event of default.[3] In addition, the lease agreement contemplated a term of three years. At the end of the period, the lease would automatically renew for another term of three years unless either party provided a written notice of termination one year prior to the end of the term.[4] The lease agreement also specified the space actually leased to profile. The pertinent provision stated: "Lessor hereby demises and Lessee hereby hires from Lessor that certain premises situate in the Arsenal Business Center ... known as Condominium Unit # 39, calculated as 6,349 square feet...."[5]

6. In June 1999, profile sold or transferred its business assets to tribute which was under the control of Spitzer as president thereof.[6] Tribute was neither a party to the original lease agreement between profile and Arsenal, nor

---

1. Deposition of Philip E. Spitzer dated July 10, 2012, plaintiff's Exhibit 20, pp. 11-20.
2. Lease agreement between Arsenal Associates and Profile Limousine Service, Exhibit A to the complaint on confession of judgment of plaintiff.
3. *Id.* ¶ 20.
4. *Id.* ¶ 25.
5. *Id.* ¶ 1.B.
6. Testimony of Philip E. Spitzer, notes of testimony dated August 18, 2014, p. 93:20.

an assignee of any rights thereof; nevertheless, tribute occupied the premises at the Arsenal Business Center and regularly paid rent as required under the lease.

7. In June 2004, tribute sold or transferred its assets to Armada Transportation Group Limited ("Armada"), and entity entirely controlled by Spitzer.[7] Armada was neither a party to the original lease agreement between Profile and Arsenal, nor an assignee of any right thereof; nevertheless, Armada occupied the premises at the Arsenal Business Center and regularly paid rent as required under the lease.

8. Armada remained in possession of the leased premises without interruption until 2011.

9. Early in 2011, Arsenal learned that Armada had expressed an intention to vacate the leased premises without providing Arsenal with a one-year notice as required under the lease agreement.[8]

10. Upon learning of Armada's intention, Arsenal forwarded to Armada a letter which warned Armada that termination of the lease, without the required one-year notice, would constitute a breach of the lease agreement. The letter specifically stated:

> I understand from a second-hand conversation with our driver ... that you thought that your lease terminated at the end of June, 2011 and that it was your intention to vacate the building as of that date. Please be advised that the current term of your lease expires on June 30, 2011, but, under the terms of your lease, you were required to give at least one year's prior written notice for the lease to have terminated as of that date, otherwise, the

7. Deposition of Philip E. Spitzer dated July 10, 2012, plaintiff's Exhibit 20, p. 48:17-21.
8. Admission of Philip Spitzer, notes of testimony, volume 1, dated August 18, 2014, p. 17:16-20.

lease continues for an additional three (3) year term commencing July 1, 2011 and expiring June 30, 2014.... If you have any questions ... please contact me.... If we do not receive a confirmation of your understanding that the lease has continued for an additional three (3) year term, we may have to take appropriate advance-legal action to protect our interests.[9]

11. Shortly after receipt of this letter, Armada's owner, Spitzer, held a meeting with a representative of Arsenal. The purpose of the meeting was to clarify whether Armada would be vacating the premises at the Arsenal Business Center. When asked by the Arsenal representative whether Armada would be vacating the premises, Spitzer replied: "Yeah, I will be out of here shortly."[10] Armada paid rent up to February 2011.[11]

12. On or about March 31, 2011, Armada received a letter from the United States Environmental Protection Agency, Region 3, Philadelphia, Pennsylvania.

13. This letter revealed that demolition work at the Arsenal Business Center had caused a potential violation of the Clean Air Act through the possible release of asbestos particles.[12]

14. Armada vacated the premises in late April 2011.[13]

15. After Armada vacated, the Department of Public Health of the City of Philadelphia posted a notice at the entrance of the basement within the leased premises. The notice enjoined anyone from entering the premises'

9. Letter dated February 2, 2011, plaintiff's Exhibit P-3.

10. Deposition of Philip Spitzer dated July 10, 2012, p. 164:17.

11. Checks showing rental payments for the month of February, 2011, plaintiffs Exhibit P-4.

12. Defendants' Exhibit 2 produced at the hearing dated August 18, 2014.

13. Admission of Philip Spitzer, notes of testimony dated August 18, 2014 p. 103:13-17.

basement without respirators and protective clothing.[14] The basement was not part of the premises which had been leased by Armada.[15]

16. On June 7, 2011, Arsenal filed a complaint-in-confession of judgment against profile (the "profile action"). The complaint in the profile action alleged that profile defaulted its obligations as a lessee by failing to make rental payments when due, and by vacating the premises prior to the end of the term. The complaint asserted that Arsenal was entitled to recover from profile the accelerated balance of rent, plus attorney's commissions, for a total of $223,098.34.[16]

17. On January 10, 2012, Arsenal also commenced the instant action (the "Armada action"). The complaint in the Armada action alleges that while profile has no assets, its "successors and/or alter ego," Tribute and Armada, "operate as a single entity under the name profile" and have assets recoverable by Arsenal.[17]

18. On July 10, 2012, Spitzer was deposed in his capacity

14. *Id.*

15. "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished.... The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous." *Walton v. Philadelphia Nat. Bank.*, 376 Pa. Super. 329, 338-39, 545 A.2d 1383, 1388 (1988). In this case, paragraph 1.B. of the lease agreement, when read in conjunctions with Exhibit A thereof, clearly and unambiguously provided that the Lessee was entitled to use and occupy only the first floor of the leased premises, for a total of 6,349 square feet, whereas the basement, comprising additional 3,480 square feet, was not included in the leased premises. In other words, Armada was not entitled to occupy the basement at the time the City of Philadelphia posted its warning upon the door thereof.

16. Complaint, *Arsenal. Inc. v. Profile Limousine Service. Inc.*, case No. 1106-00221.

17. Complaint, *Arsenal. Inc., v. Armada Transportation Group Limited and Tribute Transportation Company.* Case no. 1201-01098, ¶¶ 17-19.

as owner of Armada. In the course of this deposition, Spitzer admitted that he had been packing up and had been vacating the leased premises without providing Arsenal with the required one-year notice. Spitzer explained that he did not provide any notice to Arsenal because Armada "did not have a lease" with Arsenal and therefore he had "no standing" to provide any notice of termination.[18]

19. On January 8, 2013, profile sought Chapter 11 protection. However, the bankruptcy action was dismissed by the U.S. Bankruptcy Court for the Eastern District of Pennsylvania, on January 29, 2014.

20. On April 3, 2014, Profile filed a petition to open Arsenal's confessed judgment.

21. By order dated August 1, 2014, this court denied as untimely the petition to open Arsenal's confessed judgment. In its order, this court explained that the petition was denied as untimely because profile had challenged Arsenal's complaint in confession of judgment more than two years after the complaint had been filed.[19]

22. On August 1, 2014, this court issued another order upon Arsenal's motion for summary judgment in the Armada action. This order granted-in-part Arsenal's motion and explained that Armada and tribute are successors and *alter-egos* of profile under the doctrine of *de facto* merger.[20] However, the order provisionally denied Arsenal's portion of its motion requiring the court to assess a specific amount of damages against profile. Instead, the court stated in its order that a hearing would

18. Deposition of Philip E. Spitzer dated July 10, 2012, plaintiffs Exhibit P-20, pp. 164:9-17,166:18-25, 167:3-11.

19. Order dated August 1, 2014, *Arsenal. Inc. v. Profile Limousine Service, Inc.*, Case No. 1106-00221.

20. Order dated August 1, 2014, *Arsenal. Inc., v. Armada Transportation Group Limited and Tribute Transportation Company*. Case no. 1201-01098.

be held on August 18, 2014, "to determine the amount of rents due, if any, to [Arsenal]."[21]

23. At the hearing, Spitzer testified that he had been living all along within the leased premises because his limousine business "never closed."[22] Spitzer explained that living at the leased premises "was a condition of [his] signing the lease."[23] However, neither Spitzer nor any defendant offered any evidence to support the claim that Spitzer was allowed to live within the leased premises as a condition for his signing the lease. Therefore, the court finds this testimony non-credible.

24. Spitzer also testified that he had received permission from Arsenal to make improvements upon the premises. But when cross-examined, Spitzer admitted that he had never received from Arsenal any written authorization to make such improvements.[24]

25. Spitzer also stated that he had received written authorization from the City of Philadelphia to use the commercially leased premises as his residence; however, he failed to produce any evidence of such authorization.[25]

26. In addition, Spitzer denied that he had already decided to vacate the premises by the early part of February 2011.[26] Nevertheless, when pressed under cross-examination, Spitzer admitted about telling a representative of Arsenal, at a meeting held in early February 2011, that he was leaving the premises.[27]

---

21. *Id.*
22. Philip E. Spitzer, notes of testimony dated August 18, 2014, p. 98:21-25, 99:1-2.
23. *Id.* p. 99:5-6.
24. *Id.* p. 108:2-5.
25. *Id.* p. 108: 12-13.
26. *Id.* p. 110:14-18.
27. *Id.* p. 111: 18-23. *See also* deposition of Philip E. Spitzer dated July 10, 2012, plaintiff's Exhibit P-20, p. 164-166.

27. Finally, Spitzer testified that he vacated the leased premises because he felt the "threat of being evicted," the burden of "skyrocketed" expenses, and the presence of asbestos released in the air as a result of demolition work at the Arsenal Business Center.[28] However, when asked how he had become aware in particular of the presence of asbestos, Spitzer failed to provide a satisfactory answer and merely replied that "[w]hen ... you've got dust in your nose and mouth and your black [limousines] are white at the end of five or six hours sitting there, it was crazy."[29]

28. The court finds the entirety of this testimony muddled, confusing and not credible, and concludes that defendants vacated the leased premises without providing Arsenal with a one-year notice.[30]

29. By vacating the premises without the required one-year notice, and failing to pay rent as due for the remainder of the lease period, Armada breached the lease agreement.[31]

30. At the hearing held on August 18-19, 2014, Arsenal presented testimony and evidence to show that it incurred damages amounting to $290,565.85 as a result of Armada's improper termination of the lease. Specifically, the court heard testimony from Mr. Louis Hiban ("Hiban"), on behalf of Arsenal, and examined plaintiffs Exhibits 4-17.

31. The court finds the testimony of Hiban and the

---

28. *Id.* p. 118:15-25,119:1-5.

29. *Id.* p.119:24-25,120:1-5.

30. "The findings of a trial judge in a non-jury trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard. Inc.*, 2001 Pa. Super. 131, 777 A.2d 1090, 1092 (Pa. Super. 2001).

31. "A party claiming breach of contract must establish (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Ruthrauff. Inc. v. Ravin. Inc.*, 2006 Pa. Super. 352, 914 A.2d 880, 888 (Pa. Super. 2006). In this case, Arsenal has easily established each element listed above.

evidence presented by Arsenal as credible.[32]

Arsenal is entitled to recover from defendants, as alter egos of profile, the amount of $290,565.85.[33]

## ORDER

And now, this 8th day of September, 2014, the court having granted summary judgment in favor of plaintiff Arsenal Inc. and against defendants Armada Transportation Group Limited and Tribute Transportation Company, after an evidentiary hearing held on August 18-19, 2014, and consistent with this court's Findings-of-Fact and Conclusions-of-Law issued simultaneously herewith, it is ordered that plaintiff is entitled to recover damages from defendants in the amount of $290,565.85.[34]

---

32. *L.B. Foster Co. v. Charles Caracciolo Steel & Metal Yard. Inc.*, 2001 PA Super 131, 777 A.2d 1090, 1092 (Pa. Super. 2001), *see* footnote 30, *supra*.

33. The determination of damages is a factual question to be decided by the fact-finder.... The fact-finder must assess the worth of the testimony, by weighing the evidence and determining its credibility ... and by accepting or rejecting the estimates of the damages given by the witnesses. *Delahanty v. First Pennsylvania Bank. N.A.*, 318 Pa. Super. 90,117; 464 A.2d 1243, 1257 (Pa. Super. 1983).

34. See order dated August 1, 2014 granting-in-part plaintiff's motion for summary judgment, finding herein defendants liable to plaintiff, and scheduling an evidentiary hearing for a determination of the amount of damages recoverable by plaintiff.