J-A02040-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JUDY TORMA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PARROT CONSTRUCTION CORP., PAUL CHAMBERS, | |
| Appellees | No. 1105 WDA 2017 |

Appeal from the Order entered June 29, 2017,
in the Court of Common Pleas of Allegheny County,
Civil Division, at No(s): GD-15-017669.

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED MARCH 27, 2018**

Judy Torma appeals from the Order denying her Petition to Vacate or Modify Arbitration Award and claims that a dispute over an agreement to provide additional moving services was not covered by the arbitration clause of the parties' original construction contract.  For the following reasons, we affirm.

On May 15, 2014, Torma, on behalf of her parents, and Parrot Construction Corporation,[1] entered into a construction contract ("Construction Contract"), in which Parrot agreed to renovate certain portions of a building

_____

[1] Appellee, Paul Chambers, is the President of Parrot Construction Corporation.

owned by Torma's parents. The parties used a form contract produced by the Associated General Contractors of America, which included the following arbitration clause:

> 16.1 All claims, disputes and other matters in questions arising out of, or relating to, this Agreement or the breach thereof, Except with respect to the Architect/Engineer's decision on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of Final Payment shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

A few weeks later, on June 6, 2014, the parties executed another Agreement of Understanding ("Moving Contract"). Under this Agreement, Parrot agreed to photograph, inventory, transport, store, and sell a number of arcade and coin-operated machines owned by Torma's parents, stored in areas where Parrot needed access to perform the renovation/construction work. Torma agreed to pay Parrot for transportation costs and other fees, as well as a fee for selling any of the machines.

On March 27, 2015, Parrot filed an arbitration claim with the American Arbitration Association ("AAA"), demanding payment for its work under both the Construction and Moving Contracts. Parrot alleged that the Moving Contract was a change order and, thus, an integrated part of the Construction Contract. Torma filed an answer and counterclaim arguing, in pertinent part, that the Moving Contract was separate and distinct from the Construction Contract, and not covered by the arbitration clause of the original agreement.

At the arbitration hearing on August 22, 2015, Torma objected to the arbitrator considering the Moving Contract, arguing that the AAA lacked jurisdiction over this claim. However, the arbitrator chose to hear all evidence related to the Construction Contract and Moving Contract before issuing a decision on whether he had jurisdiction.

On August 26, 2015, the arbitrator issued a written order stating that the AAA had jurisdiction to hear the Moving Contract claim, characterizing the Moving Contract as a Change Order under the Construction Contract. On September 3, 2015, the arbitrator entered an award in favor of Parrot which included, *inter alia*, $7,500 representing the balance due pursuant to the Moving Contract.

On October 5, 2015, Torma filed a Petition to Vacate or Modify Arbitration Award in the Court of Common Pleas. Therein, Torma claimed, *inter alia*, that the arbitrator exceeded the scope of the arbitration agreement by ruling on the Moving Contract. Consequently, Torma sought to have the Arbitration award modified to exclude the amount attributable to the Moving Contract.

The trial court denied Torma's Petition on all issues, including Torma's claim that the arbitrator did not have jurisdiction. Torma filed a Notice of Appeal. By Memorandum dated January 11, 2017, this Court remanded the case on the jurisdictional issue for hearing to determine whether the arbitrator had jurisdiction over the Moving Contract. There, in pertinent part, we stated:

Upon review of the Construction Contract and the Moving Contract, we conclude that, contrary to the apparent view of both the arbitrator and the trial court, the terms of the two contracts do not clearly resolve the question whether disputes under the Moving Contract are subject to the arbitration clause in the Construction Contract. . . . Torma argues that the arbitration clause of the Construction Contract does not apply to the Moving Contract. According to Torma, '[t]he plain meaning of the language of the Moving Contract makes it clear that its scope applied to the moving storing and selling of personal property. . . [, which] has nothing to do with the design and construction of renovations to the. . . [b]uilding.' Parrot argues in response that the Moving Contract 'was a change order to the [Construction C]ontract as the removal of items and other preparations were necessary as part of the renovations.' According to Parrot, "the parties contemplated and executed that agreement as part of the [C]onstruction [C]ontract and incorporated it and other change orders. Because we find that both of these interpretations are reasonably plausible, we remand the matter to the trial court so that the parties may present evidence to assist the trial court in determining whether the arbitrator had jurisdiction over the Moving Contract.

*Torma v. Parrot Constr. Corp., et al.*, 363 WDA 2016, unpublished memorandum at 15-18 (January 11, 2017).

On June 5, 2017, the trial court held an evidentiary hearing which focused on whether the language of the agreement, and the facts related thereto, justified the arbitrator's exercise of jurisdiction over the dispute concerning Parrot's moving, storage and sale of certain machines and equipment which were stored in the building. From this hearing, the trial court elicited the following facts surrounding the execution of the two documents in issue.

Torma hired Parrot to correct serious structural and other deficiencies in a commercial building owned by her parents. A lot of old tools and other items

were stored in the building which had to be moved and scrapped. There were also old vending machines stored in the building. All these items had to be removed so that Parrot could perform the construction/renovation work. Torma was well aware that these things had to be moved so that construction could start. Torma believed that the vending machines were valuable, and tried to remove the machines on her own, but was unable to find someone to do it. As a result, she asked Parrot to remove these things from the building until the work was finished and scrap the junk. This resulted in the execution of the Moving Contract on June 6, 2014, between Torma and Parrot. This was one of several change orders executed under the Construction Contract.

Thereafter, the trial court entered a decision on June 28, 2017, concluding the arbitrator properly had jurisdiction over the Moving Contract, because it was a change order to the original Construction Contract which contained an arbitration clause requiring all claims to be arbitrated. Torma appealed again; the matter is now before us.

In this appeal, Torma raises the following issue:

> Whether the trial court erred as a matter of law or abused its discretion when it concluded that the Moving Contract was a change order to the Agreement, and therefore the arbitrator had jurisdiction over the Moving Contract.

Torma Brief at 5.

The arbitration agreement in the instant case is governed by 42 Pa.C.S. section 7341 *et seq*. which pertains to common law arbitration. 42 Pa.C.S. § 7341 *et seq.* Our standard of review of common law arbitration is very limited.

In reviewing a trial court's order on a petition to vacate or modify a common law arbitration award, our review is limited as follows:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to statutory arbitration or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law. The appellant bears the burden to establish both the underlying irregularity and the resulting inequity by clear, precise, and indubitable evidence.

*Andrew v. CUNA Brokerage Services, Inc.*, 976 A.2d 496, 500 (Pa. Super. 2009) (internal citations and quotation marks omitted). In particular, an award may also be corrected if the arbitrator exceeds the scope of his authority. *Gargano v. Terminix Int'l Co., L.P.*, 784 A.2d 188, 193 (Pa. Super. 2001). "The power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submissions.'" *Boulevard Associates v. Seltzer P'ship*, 664 A.2d 983, 987 (Pa. Super. 1995) (quoting *Sley Sys. Garages v. Transportation Workers Union of Am.*, 178 A.2d 560, 561 (Pa. 1962)).

Torma argues that the trial court erred in concluding that the Moving Contract was a change order, rather than an entirely separate contract

between the parties. According to Torma, "the Trial Court abused its discretion because it relie[d] entirely upon the credibility of witness testimony presented to support its conclusion; and that the Trial Court committed an error of law by simultaneously ignoring the provisions of the documentary evidence that unambiguously show the Moving Contract does not fall under the Agreement's definition of change order as a matter of law." Torma Brief, at 16. Torma emphasizes that "[w]hen interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties." *Melton v. Melton*, 831 A2d 646, 653-54 (Pa. Super. 2003). Where the rights are based on an unambiguous writing, the parties' intent must be determined from the writing itself, not from testimony as to the parties understanding or intent. Personal belief is irrelevant. *Grey Fox Plaza v. Herbert, Rowland and Grubic, Inc.*, 2017 WL 519827 at 8 (Pa. Comwlth. 2017). Consequently, Torma's entire argument is premised solely upon the documents themselves.

Conversely, Parrot argues that the trial court did not err in concluding the Moving Contract was a Change Order and thus, was subject to the arbitration clause. The documents and testimony support this conclusion.

Before addressing the core of the matter before us, we review the basic principles of contract interpretation applicable to this claim.

Generally, the intent of the parties, which governs the interpretation of the contract, is to be ascertained from the writing itself. In most cases, the

trial court is limited to examining only the contents of the actual agreements between the parties. However, as a panel of this Court previously concluded, contrary to Torma's contention, the terms of the contracts in this matter were not clear and unambiguous. The intent of the parties, regarding whether the Moving Contract was subject to arbitration, was not evident from the face of the documents. Under these circumstances, "parol evidence is admissible to explain or clarify or resolve the ambiguity . . . ." **Miller v. Poole**, 45 A.3d 1143, 1146 (Pa.Super. 2012).

"Where the words used in a contract are ambiguous, the surrounding circumstances may be examined to ascertain the intent of the parties." **Walton v. Philadelphia Nat'l Bank**, 545 A.2d 1383, 1389 (Pa. Super. 1988). While "[t]his Court may determine the existence of an ambiguity as a matter of law, [ ] the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact." **Windows v. Erie Ins. Exch.**, 161 A.3d 953, 958 (Pa. Super. Ct. 2017) (*quoting* **Walton, supra**). Concluding that the contracts were ambiguous, we remanded the case to the trial court for testimony to ascertain the parties' intent.

The provisions in the contracts at issue in this case are no different now than they were when the trial court entered its Decision of June 28, 2017, and when this Court issued its Memorandum of January 11, 2017. Consequently, for us to rely solely on the documents in this situation, as advocated by Torma, would completely contradict our prior decision. The trial court did not err by

conducting an evidentiary hearing and considering evidence outside the documents themselves. To the contrary, the trial court did exactly as this Court instructed. Thus, in deciding this appeal, we look beyond the four corners of the documents and consider all the evidence presented to the trial court in this matter, both testimony and documentary.

In claiming that the Moving Contract was a separate contract or transaction, and not subject to the arbitration clause, Torma first argues that the Construction Contract spelled out a very narrow and limited scope of work. The Construction Contract describes the Project as: "Renovations to the front wall and middle of the roof of existing space known located at 1007 Constance Street, Pittsburgh, PA 15212". The Construction Contract further defines Project in Article 1.3 as the "total construction to be designed and constructed of which the Work is a part. The Work comprises the complete construction required by the drawings and specifications." Based upon these provisions, Torma argues that the scope of the Construction Contract was solely for renovation and construction to the front wall and middle of the roof of the building based upon the Architect's plans. Torma further suggests that this scope could not be modified.

Torma additionally argues that the term "Change Order" was defined in the Construction Contract. According to Torma, based upon the definition of "Change Order" in the Construction Contract, "Change Orders" can only be issued in the following situations: 1) unknown or concealed condition; 2)

change in price; 3) extension of time; and 4) an emergency. The Moving Contract, additional services to be provided by Parrot, did not fall within any of these categories, and thus cannot be considered a "Change Order".

Parrot argues that, although the Moving Contract is not termed a "Change Order", it nonetheless is a "Change Order" to the scope of the Project as provided for under Article 9 of the Construction Contract. We agree.

Obviously, the moving work performed by Parrot was not included in the original scope of work. Contrary to Torma's argument, however, the terms of the Construction Contract did not preclude those services from being added. Ariticle 9.1 permits the Owner to "order **changes in the Project** within the general scope of this Agreement consisting of additions, deletions or other revisions . . . ." Article 9.1.1 of the Construction Contract clearly states that "[a] Change Order is a written order to the Contractor signed by the Owner or his authorized agent and issued after the execution of the Agreement, **authorizing a Change in the Project** . . . ." (emphasis added). Thus, the Project could be redefined or expanded, and was not limited to renovations or construction as argued by Torma. Moreover, the Moving Contract met the technical requirements of a Change Order. It was executed by Torma a little less than a month after the execution of the Construction Contract. It expanded the scope of the Project to include removal of the things stored in the building. Consequently, contrary to Torma's argument, the Moving Contract could be considered as a Change Order to the Project. The testimony

adduced at the hearing before the trial court supports the trial court's finding that the Moving Contract was a change order rather than a separate agreement.

Before the renovation work could commence, the building had to be cleared out; the building was full of items including, vending machines, material, metal, old tools, and debris. Removal of these items is typically the responsibility of the owner. Torma, however, was unable to arrange to have the building cleared out on her own, and was being pressured by the city to make the required repairs. Parrot told Torma that construction could not start until the most of the items were cleared out of the building. Torma asked for a proposal from Parrot to perform this work. Consequently, the parties entered into the Moving Contract. Parrot reasonably considered this to be a Change Order as defined under the Construction Contract.

The presentation of testimony to explain the circumstances surrounding the formation of the Moving Contract helped the trial court to resolve the ambiguity between the Construction Contract and Moving Contract. Because the removal of the items was necessary to carry out the Construction Contract, we think the trial court properly found that the moving services expanded the scope of the original services under the Construction Contract and constituted a Change Order. In making this decision, as the trier of fact, the trial court properly considered the credibility of Torma and

Chambers as witnesses when they described the circumstances surrounding the execution of the two contracts.

Finally, the trial court's interpretation is consistent with the long-standing principle of contract law that "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." ***Neville v. Scott***, 127 A.2d 755, 757 (Pa. Super. 1957). We, therefore, conclude that the trial court did not abuse its discretion in finding that the Moving Contract was a Change Order to the Construction Contract rather than a separate, unrelated agreement between the same parties.

In affirming the trial court's conclusion that the Moving Contract was a Change Order to the Construction Contract, we believe we have resolved the parties' issue of whether the arbitration clause could cover the Moving Contract dispute since it was part of the Construction Contract. Next, we will briefly address whether the dispute did fall within the specific language of the arbitration clause. In reviewing the arbitration clause, we keep in mind the following legal principles.

"Arbitration agreements are contracts and should be interpreted using contract principles." ***Bucks Orthopedic Surgery Associates, P.C. v. Ruth***, 925 A.2d 868, 872 (Pa. Super. 2007). "The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties." ***Lower***

*Frederick Twp. v. Clemmer*, 543 A.2d 502, 510 (1988). "The scope of arbitration is determined by the intention of the parties as ascertained in accordance with the rules governing contracts generally" as discussed in full above. *D & H Distrib. Co. v. Nationall Union Fire Ins. Co.*, 817 A.2d 1164, 1166 (Pa. Super. 2003). "Even though it is now the policy of the law to favor settlement of disputes by arbitration and to promote the swift and orderly disposition of claims, **arbitration agreements are to be strictly construed and such agreements should not be extended by implication."** *Setlock v. Pinebrook Pers. Care & Ret. Ctr.*, 56 A.3d 904, 907–08 (2012) (*quoting Elwyn v. DeLuca*, 48 A.3d 457, 461 (Pa.Super.2012)) (citations and quotation marks omitted; emphasis added).

In this case, the arbitration clause of the Construction Contract provided in pertinent part:

> All claims, disputes and other matters in questions **arising out of, or relating to, this Agreement** or the breach thereof, Except with respect to the Architect/Engineer's decision on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of Final Payment shall be decided by arbitration. . . .

It is clear that the issue of payment for Parrot's moving services, a matter of contract, plainly arose out of the Construction Contract as modified by the terms of the Moving Contract. Furthermore, the arbitration clause in this case is very broad. In *Dodds v. Pulte Home Corp.*, 909 A.2d 348 (Pa. Super. 2006), this Court found that contractual language such as the language at issue herein to be an "unlimited arbitration clause". *Dodds*, 909 A.2d at 350.

"Where an arbitration clause is unrestricted, the parties to the contract could be **compelled to arbitrate any claim that implicates a contractual obligation**." *Smay v. E.R. Stuebner*, Inc. 864 A.2d 1266, 1274 (Pa.Super. 2004) (emphasis added). Here, it is apparent that without the moving services of Parrot, the original scope of the Construction Contract, i.e., construction of and renovation to the building, could not have been performed. Thus, the moving services were fundamentally related to Parrot's performance of its obligations under the Construction Contract. Consequently, consistent with the rationale of *Smay*, any issues with the moving services would properly be subject to arbitration under the Construction Contract. Additionally, but for the construction/renovation project, there would be no Moving Contract. Clearly, the moving services arose out of, or are related to, the Construction Contract and the work to be done thereunder. Per the language of the arbitration clause in this case, anything arising out of the Construction Contract, such as the moving services, was subject to the arbitration clause and properly within the arbitrator's jurisdiction. We, therefore, conclude that the trial court did not commit an error of law in finding that Torma and Parrot's dispute over the moving services arose out of or was related to the Construction Contract and thus subject to arbitration.

**<u>CONCLUSION</u>**

After careful review of the contract provisions and the parties' intentions as reflected in the contract documents as well as the testimony presented

before the trial court, we conclude that the trial court did not abuse its discretion or commit an error of law when it confirmed[2] the arbitration award with respect to the Moving Contract.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2018

---

[2] We view the trial court's decision as a confirmation of the arbitrator's award even though the trial court did not specifically enter an order stating that it was confirmed. Another panel of this Court previously addressed this issue. **See Torma**, 363 WDA 2016, unpublished memorandum at 15-18 n. 3.