J-S27008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PHYLLIS M. HESS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RODNEY R. HESS, | |
| Appellant | No. 1094 MDA 2015 |

Appeal from the Order Entered May 18, 2015
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-08-06819

BEFORE:  SHOGAN and DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 27, 2016**

Rodney R. Hess ("Husband") appeals from the May 18, 2015 order granting a petition to enforce filed by Phyllis M. Hess ("Wife") and directing Husband to pay Wife $12,000 for breach of their divorce agreement ("the Agreement") and $2,525 for her attorney's fees.  We affirm.

The trial court summarized the history of this matter as follows:

> This matter commenced on June 23, 2008, when [Wife] filed for divorce from [Husband].  The parties eventually attended a divorce hearing before Special Divorce Master, Julia G. Vanasse on February 24, 2011.  At the outset of the hearing the Master stated:  "This is the time and place that <u>was</u> set for the hearing in the Hess versus Hess matter.  And it is my understanding that the parties have arrived at an agreement between themselves in order to conclude this matter today, and we're actually putting a full postnuptial agreement on the

---

[*]  Former Justice specially assigned to the Superior Court.

record." (Trial Tr. p 2, 5–11, February 24, 2011.) Neither party has asserted that the Master inaccurately summarized the purpose of the hearing. An agreement was entered on that date.

On September 24, 2014, after a family business court presentation and upon consideration of Wife's Petition for Enforcement and Contempt of Divorce Agreement Dated February 24, 2011, the court scheduled a hearing. The hearing was held on April 16, 2015, and the Court issued an order on May 15, 2015.

* * *

Both Wife and Husband agree that Husband has not paid all of the money due to Wife under the parties' Agreement (Trial Tr. p. 6–13, 51–52, April 16, 2015). At the time of the April 16, 2015 hearing, Husband had not paid $12,000.00 of the equitable distribution portion of the Agreement and had missed three months of the alimony portion of the [A]greement. (Id. at 6–13). Husband testified that he did not knowingly and voluntarily enter into the Agreement (Id. at 24). At the time of the Agreement, Husband was not represented by counsel, and he testified that he did not understand that the alimony and equitable distribution portions of the Agreement were two separate things and that he would be responsible to pay both amounts to Wife in accordance with the Agreement. (Id. at 23–24, 43–44).

Prior to the divorce master hearing, Husband did have an attorney and that attorney helped draft the language of the Agreement (Id. at 45). Husband testified that he had representation until late 2010 (Id.). The court accepted his attorney's Petition to Withdraw as Counsel on January 24, 2011. (See court's January 24, 2011 Order.) Husband testified that he reads and writes in English and that he ran a successful business during the parties' marriage (Trial Tr. p. 31, April 16, 2015). When the Agreement was read onto the record, the divorce master asked Husband if he had a chance to review portions of the Agreement with his prior counsel, if he heard and understood the terms, and if he voluntarily wished to enter into the Agreement, and Husband responded in the affirmative (Trial Tr. p. 10–11, February 24, 2011). At the conclusion of the April 16, 2015 hearing, Wife withdrew the contempt portion of her

petition, asking the court to consider only the enforcement of the Agreement (Trial Tr. p. 57, April 16, 2015). Neither side presented testimony to support the existence of fraud, misrepresentation, or duress when the parties entered into the Agreement. The court therefore found that a valid contract between Husband and Wife was formed on February 24, 2011, Husband and Wife are bound by contract principles found in Pennsylvania law, and Husband was in breach of the Agreement. (See court's May 15, 2015 Order.)

Trial Court Opinion, 8/13/15, at 1–4. Husband filed a timely appeal, and both he and the trial court complied with Pa.R.A.P. 1925.

Husband presents the following questions for our consideration:

Is the failure of the trial court to address [Husband's] claim of duress appealable error?

Did the trial court err in that it placed too much emphasis on [Husband] having an attorney prior to the divorce master hearing?

Did the trial court err in that it placed too little emphasis on [Husband's] statement that his agreement was based only on his continuing to have the current income from his business?

Husband's Brief at unnumbered 4.

In Pennsylvania, we enforce settlement agreements between husband and wife in accordance with the same rules applicable to contract interpretation. *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa. Super. 2002). Thus, our review is guided by the following standards:

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

- 3 -

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007) (citations omitted). Furthermore:

this Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (citation omitted).

Husband's first issue concerns his defense of duress.[1] According to Husband, for "two and a half years [he] was badgered, humiliated and falsely accused of hiding money;" he was "under huge stress;" his "business was in harm's way if [Wife's] constant fraud allegations became public knowledge;" and he "was not free to consult with counsel, as finances prohibited it[.]" Husband's Brief at unnumbered 7–8 (internal quotation marks omitted). Husband argues that such testimony was evidence of "duress," which is defined as "the degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity

---

[1] Husband raised the issue of duress in his statement of errors complained of on appeal. Pa.R.A.P. 1925(b) Statement, 6/16/15, at ¶ 1.

or apprehension to overcome the mind of a person of ordinary firmness."

*Id.* at unnumbered 7 (quoting ***Adams v. Adams***, 607 A.2d 1116, 1119 (Pa.

Super. 1992)).

We note that the premise of Husband's first question, as presented, is

flawed. The trial court did, in fact, consider his claim of duress:

> Duress is defined as: "That degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness. . . . Moreover, in the absence of threats of actual harm there can be no duress where the contracting part is free to consult with counsel." Lugg v. Lugg, 64 A.3d 1109, 1113 (Pa. Super. 2013) quoting Adams v. Adams, 607 A.2d 1116, 1119 (Pa. Super. 1992) (disapproved on other grounds by Stoner v. Stoner, 819 A.2d 529 (Pa. Super. 2003)). Husband affirmed to the Divorce Master that his entry into the Agreement was both knowing and voluntary. While he retracted those affirmations at the April 16, 2015 hearing, the Court did not find his retractions credible. **Further, Husband raised no claims of duress regarding his entry into the Agreement at the April 16, 2015 hearing. He offered no testimony or evidence of any restraint or danger, either actual or threatened.** While Husband may be displeased with the Court's findings of fact that are contrary to his position, such displeasure alone is not sufficient to constitute reversible error.

Trial Court Opinion, 8/13/15, at 5–6 (emphasis supplied).

Upon review of the certified record, we discern no basis on which to

disturb the trial court's ruling. The record supports the trial court's factual

finding that Husband offered no testimony or evidence of any restraint or

danger, either actual or threatened. Indeed, Husband confirmed that he

heard and understood all of the terms of the agreement as they were placed

on the record; that he had an opportunity to review the legally binding

language drafted by his attorney; and that he was voluntarily entering the Agreement in lieu of a hearing. N.T., 2/24/11, at 10–11. The testimony Husband did offer concerned financial hardships and the bitterness of divorce, none of which prevented him from knowingly and voluntarily executing the Agreement that his attorney helped to draft. Moreover, with regard to credibility determinations, we defer to the trial judge who presided over the proceedings. *Mackay*, 984 A.2d at 533. Husband's first issue does not warrant relief.

We address Husband's second and third issues in tandem because they both challenge the weight of the evidence. We reiterate, "[W]ith regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand." *Mackay*, 984 A.2d at 533.

Husband first argues that the trial court erred by placing too much emphasis on the fact that Husband had an attorney before the February 24, 2011 hearing in front of the divorce master. Husband's Brief at unnumbered 8. Husband asserts, "[T]he fact [Husband] had counsel prior to the hearing, does not negate his inability to consult with counsel at the divorce master hearing." *Id.* at unnumbered 9. Next, Husband argues that the trial court placed too little emphasis on Husband's understanding that he was financially responsible under the Agreement as long as he was "president of [his] company" and could "meet these financial obligations." Husband's

Brief at unnumbered 9. Husband contends that "if [he] had counsel or at least an opportunity to consult with counsel, such language would [not] have made it into the [A]greement." *Id.* at unnumbered 10.[2]

For each of the issues, the trial court considered legal principles and the terms of the Agreement. Moreover, Wife and Husband each provided testimony supporting their positions. N.T., 4/16/15, at 4–23, 23–55. The trial court had the opportunity to observe both witnesses. It gave less weight to Husband's testimony based on his retractions and improbable assertions. Then, it rendered its opinion accordingly:

> A marriage settlement agreement is not void on grounds that a spouse did not consult with independent legal counsel prior to executing the agreement. Simeone v. Simeone, 581 A.2d 162 (Pa. 1990). In this case however, Husband did have an attorney until late 2010. He admits that portions of the Agreement were actually drafted by this attorney, and Husband testified that he had a chance to discuss those portions with the attorney prior to the February 24, 2011 settlement hearing, even though Husband was unrepresented at that hearing. Not only did Husband have the acumen to run his own business, but he had the prior benefit of counsel regarding the Agreement. Both of these factors cause the Court to question Husband's assertions at the June 2015 hearing that he failed to understanding [sic] of the Agreement when he entered into it on February 24, 2011.
>
> Further, terms of a marriage settlement agreement are binding on a spouse without regard to whether those terms were fully understood by that spouse when the agreement was executed. Id. However, Husband affirmed to the Divorce Master that his entry into the Agreement was both knowing and

_____

[2] In violation of Pa.R.A.P. 2119(a), Husband does not cite any legal authority in support of his weight arguments.

voluntary, and the Court did not find credible, his April 16, 2015 testimony to the contrary.

\* \* \*

At the February 24, 2011 divorce hearing Husband said, "I want to make it noted that as long as I am president of this company, I can meet these settlement obligations." To which the Master replied, ". . . It is a binding agreement, so even if factors change, it's not going to change the nature of the agreement." (Trial Tr. p. 8, February 24, 2011). The Agreement does not contain a modification and waiver clause, requiring any modification or waiver to be formally executed. At no point does the Agreement contemplate that Husband can stop making payments simply because his circumstances change. The court found that the parties intended to be bound by the Agreement regardless of changes in circumstances.

Trial Court Opinion, 8/13/15, at 6–7.

Upon review of the certified record, we conclude that the trial court's credibility and weight determinations are well supported. After hearing the terms of the Agreement placed on the record, the divorce master stated: "[B]ased on things as they stand right now, this was the parties' agreement. But we also discussed the fact that it is a binding agreement, so even if factors change, it's not going to change the nature of the agreement." N.T., 2/24/11, at 8. Additionally, Wife's counsel explained, "Even if [Wife] were to lose her job and her income would decline, if [Husband's] company was to increase its revenues or you were to win the Power Ball, this doesn't change. Your financial picture is frozen in time. This is a binding agreement, despite the fact both of you had to give a little bit to get to where we are today." N.T., 2/24/11, at 9. Husband affirmed that he heard and understood the

terms of the agreement as they were placed on the record at the divorce master's hearing. N.T., 2/24/11, at 10–11. His subsequent attempt to retract those statements was disingenuous. N.T., 4/16/15, at 47–49.

Based on the certified record and the trial court's well-reasoned discussion set forth above, we will not disturb the trial court's credibility and weight conclusions, and we find no abuse of discretion or error of law. Thus, we affirm the May 18, 2015 order granting Wife's petition to enforce.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/2016