J-A01043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBORAH K. KING, N/K/A DEBORAH K. BOOKHIMER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS S. KING | : | |
| | : | No. 469 MDA 2021 |
| Appellant | : | |

Appeal from the Order Dated March 22, 2021
In the Court of Common Pleas of Fulton County Civil Division at No(s):
280-2009

BEFORE: LAZARUS, J., NICHOLS, J., and KING, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED:  JANUARY 19, 2022**

Thomas S. King (Husband), appeals *pro se* from the trial court's order granting relief to Deborah K. King, now known as Deborah K. Bookhimer (Wife).  Husband argues that the court erred by (1) awarding Wife interest on an unpaid amount owed by Husband to Wife, and (2) awarding 50% of Husband's equity in one of the marital properties to Wife.  We affirm.

We present the facts and procedural history as stated by the trial court:

On October 24, 2018, [the trial court] ordered [Husband] to pay [Wife] $36,143.67[, which is the total sum of a marital line of credit, delinquent taxes, and legal fees.  Husband] owes this money to [Wife] due to his failure to remove her from a marital line of credit before filing for bankruptcy, resulting in her being responsible for the $31,770.49 debt.  This failure was a breach of their marriage settlement agreement dated June 29, 2010.  [The marriage settlement agreement stated that Wife would convey her marital interest in the property located on Sheepskin Hollow Road in Dublin Township, Fulton County (Sheepskin Hollow Property), to Husband.  ***See*** Ex. A to Wife's Pet. to Enforce [Marriage] Settlement Agreement, 7/13/08, at ¶11(C).  Husband] had also

agreed to compensate [Wife] $2,333.18 for her payment of delinquent taxes. The court also ordered [Husband] to pay $2,040.00 in legal fees [per the parties' marriage settlement agreement. Husband] was further ordered to sell two parcels of real property, his only remaining assets, to satisfy his debt to [Wife. Husband] unsuccessfully appealed the order, and [this Court affirmed on August 29, 2019. **King v. King**, 1891 MDA 2018 (Pa. Super. filed Aug. 29, 2019) (**King I**) (unpublished mem.).[1]]

Throughout 2020, the parties attempted to effectuate a sale of [the Sheepskin Hollow Property.] Due to both the miscommunication between and non-cooperation of the parties, a negotiated sale of the Sheepskin Hollow Property fell through. [Wife] filed a motion with [the trial] court to enforce its October 24, 2018, decision.

Trial Ct. Op., 6/8/21, at 1-2.

Following two hearings, on March 22, 2021, the trial court denied Wife's motion to enforce the marriage settlement agreement but exercised its equitable power under 23 Pa.C.S. § 3323 and granted relief to Wife. In relevant part, the trial court ordered, *inter alia*, the sale of the Sheepskin Hollow Property and that $36,143.67 plus interest from the sale of the property be paid to Wife to satisfy Husband's obligations. **Id.** at 3; **accord** Order, 3/22/21. The trial court additionally ordered that Husband and Wife were to split equally the remaining proceeds from the sale of the Sheepskin

_____

[1] In **King I**, Husband, *pro se*, argued the trial court violated his right to due process. **King I**, 1891 MDA 2018 at 3. The **King I** Court held, *inter alia*, that Husband failed to preserve his claim in the trial court and, regardless, failed to develop his arguments. **Id.** at 3-4.

Hollow Property. Trial Ct. Op. at 9; *accord* Order, 3/22/21.[2] Husband timely appealed, and on May 14, 2021, he voluntarily filed a non-court ordered Rule 1925(b) Statement.[3,4]

Husband raises the following issues:

1. Did the [trial] court violate [Husband's] rights to due process under Amendment Five of the Constitution by ordering him to pay interest on the previous amount awarded to [Wife] from October 24, 2018 when interest was never requested by [Wife], interest was never ordered by the [trial] court [in its October 24, 2018 order, the parties'] settlement agreement

_____

[2] No post-trial motion may be filed in any domestic relations matter. Pa.R.C.P. 1930.2.

[3] On April 22, 2021, the trial court ordered Husband to comply with Pa.R.A.P. 1911, which governs the request of transcripts. Order, 4/22/21. Upon review of the order, the trial court apparently intended to order Husband to comply with Rule 1925(b) but never actually ordered Husband to comply with Rule 1925(b). *See id.* at 1 (noting the trial court was "uncertain as to the basis of the appeal").

We add that Husband is incarcerated and averred he placed the Rule 1925(b) statement in the prison mailbox on May 14, 2021. *See Thomas v. Elash*, 781 A.2d 170, 178 (Pa. Super. 2001) (*per curiam*) (extending prison mailbox rule to all civil cases).

[4] The trial court has suggested that Husband's appeal is not from an appealable order. Trial Ct. Op. at 4-5 (discussing Pa.R.A.P. 311 and 341). We respectfully disagree. This Court has held that orders filed subsequent to a divorce decree may be appealable when entered. *See Danz v. Danz*, 947 A.2d 750, 751 n.1 (Pa. Super. 2008) (holding that an order refusing to open or vacate divorce decree was a final and appealable order); *Dalessio v. Dalessio*, 805 A.2d 1250, 1252 n.2 (Pa. Super. 2002) (concluding that an order entered after the parties' divorce decree was entered and after all economic claims were resolved was a final and appealable order). Instantly, the parties were divorced on July 16, 2010. Divorce Decree, 7/16/10. The order at issue was filed over ten years later on March 22, 2021. Because no other claims are outstanding, Husband's appeal is properly before this Court. *See, e.g.*, *Danz*, 947 A.2d at 751 n.1.

does not call for any interest to either party for any reason and further, at no time during the [hearings] was [interest] ever discussed or ever debated upon.

2. Did the [trial] court violate [Husband's] rights to due process under Amendment Five of the Constitution by ordering him to pay 50% of his equity in said property to [Wife] when equity was never requested by [Wife], equity was never ordered by the [trial] court [in its] October 24, 2018 court order, [the parties' marriage] settlement agreement does not call for any equity to [Wife] for any reason and further, at no time during the [hearings] was this matter ever discussed or ever debated upon.

3. Did the [trial] court violate [Husband's rights] to due process under Amendment Five of the Constitution by ordering its broad power of equity and jurisdiction offered by 23 Pa.C.S. [§] 3323(f) and thereby supervise the sale of [the] Sheepskin Hollow Road Property when [trial court] knew from realtor, Ron Richards['] testimony, the problem with the previous offer to purchase was due to [Wife's] lack of responsibility to properly negotiate the sale price [and Wife's] total disregard for [Husband's] ownership and equity in said property.

4. Did the [trial] court violate [Husband's rights] to due process under Amendment Five of the Constitution by ordering [Wife] control over various aspects of the sale of said [property] when the [parties' marriage] settlement agreement clearly states said property belongs to [Husband].

Husband's Brief at 7, 19-20 (formatting altered).

We summarize Husband's arguments together, as they are related. Husband contends the trial court erred by awarding interest on the amount he owes to Wife. *See, e.g.*, *id.* at 16. Husband similarly asserts that the trial court improperly awarded 50% of the equity from the sale of the Sheepskin Hollow Road Property to Wife, when the parties' marriage settlement agreement provided that only Husband owned the Sheepskin Hollow Road

Property. *Id.* at 18-19. Husband apparently argues that the record did not support the trial court's decision to exercise its equitable power to supervise the sale of the Sheepskin Hollow Road Property. *Id.* at 19-21.

As a preliminary matter, this Court has stated:

While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because [he] lacks legal training. As our Supreme Court has explained, any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing.

*Branch Banking & Trust v. Gesiorski*, 904 A.2d 939, 942 (Pa. Super. 2006) (citation omitted and formatting altered). "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003) (citations omitted); *see also* Pa.R.A.P. 2119. "When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a Court will not consider the merits thereof." *Gesiorski*, 904 A.2d at 942-43 (citations omitted). "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018) (citation omitted).

With respect to the merits, by way of background, Section 3502(e) of the Divorce Code permits the trial court to supervise the sale of a property in

order to enforce a marital settlement agreement:

> **(e) Powers of the court.—**If, at any time, a party has failed to comply with an order of equitable distribution, as provided for in this chapter or with the terms of an agreement as entered into between the parties, after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order:
>
> \* \* \*
>
> (4) order and direct the transfer or sale of any property required in order to comply with the court's order . . . .

23 Pa.C.S. § 3502(e); **see also Osial v. Cook**, 803 A.2d 209, 215 (Pa. Super. 2002) (holding that the wife was entitled to statutory interest in connection with the parties' marital settlement agreement).  Further, the trial court has broad equitable powers to enforce a marital settlement agreement:

> **(f) Equity power and jurisdiction of the court.—**In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S. § 3323(f); **see also Annechino v. Joire**, 946 A.2d 121, 124 (Pa. Super. 2008) (holding that Section 3323(f) may be used to enforce a marital settlement agreement).

> In equity matters, appellate review is based on a determination by the appellate court of such questions as whether: (1) sufficient evidence supports the findings of the judge; (2) the factual inferences and legal conclusions based on those findings are correct; (3) there has been an abuse of discretion or an error of law.  Generally, in an appeal from a trial court sitting in equity, the standard of review is rigorous.  The function of this Court on

- 6 -

an appeal from an adjudication in equity is not to substitute its view for that of the lower tribunal; our task is rather to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal.

***Hess v. Gebhard & Co.***, 808 A.2d 912, 920 (Pa. 2002) (citations omitted and formatting altered).

Instantly, we have carefully reviewed Husband's brief and find the defects to be substantial. Husband fails to develop any of his arguments by applying any legal principles to his case. ***See*** Pa.R.A.P. 2119(a); ***Gesiorski***, 904 A.2d at 942-43. Significantly, Husband's brief does not contain citations to, or appropriate analyses of, any legal authority. ***See*** Pa.R.A.P. 2119(a); ***Eichman***, 824 A.2d at 319. Although we liberally construe Husband's *pro se* brief, we are barred from acting as his counsel and developing his arguments. ***See Milby***, 189 A.3d at 1079. Because Husband waived his issues, we affirm. ***See id.***; ***see also King I***, 1891 MDA 2018 at 3-4 (concluding Husband waived his issues due to, *inter alia*, deficient brief).

Regardless, even if Husband properly developed his claims of error, we would affirm on the basis of the trial court's reasoning and agree with the trial court that it had the authority under Section 3323 to award interest on the unpaid amount Husband owed to Wife. ***See*** 23 Pa.C.S. § 3323(f); Trial Ct. Op. at 9-10; ***see also Osial***, 803 A.2d at 215. We also agree with the trial court's reasoning that it properly exercised its equitable authority under Section 3323(f) to supervise the sale of the Sheepskin Hollow Property and

award Wife a 50% share of the net proceeds due to Husband's noncompliance with the marital settlement agreement. *See* Trial Ct. Op. at 8-9; 23 Pa.C.S. § 3323(f). For these reasons, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/19/2022

# THE COURT OF COMMON PLEAS OF THE 39th JUDICIAL DISTRICT OF PENNSYLVANIA – FULTON COUNTY BRANCH

Deborah K. Seville, a/k/a Deborah K.
Bookheimer, a/k/a Deborah K. King
            Plaintiff / Appellee

            v.

Thomas S. King
            Defendant / Appellant

Case Type:     Civil Action

Case No.:      2009-280C

Judge:         Todd M. Sponseller

FULTON COUNTY
PENNSYLVANIA
FILED

JUN 0 8 2021

PROTHONOTARY, CLERK OF COURTS,
CLERK OF ORPHANS COURT,
REGISTER OF WILLS, RECORDER OF DEEDS

## OPINION *sur* Pa.R.A.P. 1925(a)

**Before Sponseller, J.**


SCANNED          ORIGINAL

# IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Deborah K. Seville, a/k/a Deborah K. Bookheimer, a/k/a Deborah K. King | : : : | Case Type: Civil Action |
| Plaintiff / Appellee | : : | Case No.: 2009-280C |
| v. | : : | |
| Thomas S. King | : | Judge: Todd M. Sponseller |
| Defendant / Appellant | : : : | |

## OPINION sur Pa. R. App. P. 1925(a)

### I.    OVERVIEW

Appellant Thomas S. King ("Mr. King") appeals to the Superior Court following this court's Order dated March 17, 2021, which related to the anticipated sale of real property to satisfy a debt Mr. King owes to Plaintiff. In his *Concise Statement of Matters Complained Of on Appeal* ("Concise Statement"), Mr. King alleges that various provisions of the March 17, 2021, order violated his Fifth Amendment Due Process rights. For the reasons that follow, we submit that no error was made and respectfully request that the Honorable Superior Court of Pennsylvania affirm our decision.

### II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 24, 2018, this court ordered Mr. King to pay $36,143.67 to Plaintiff, now known as Deborah K. Seville ("Mrs. Seville"). Mr. King owes this money to Ms. Seville due to his failure to remove her from a marital line of credit before filing for bankruptcy, resulting in her being responsible for the $31,770.49 debt. This failure was a breach of their marriage settlement agreement dated June 29, 2010. Mr. King had also agreed to compensate Mrs. Seville

1

$2,333.18 for her payment of delinquent taxes. The court also ordered Mr. King to pay $2,040.00 in legal fees.[1] Mr. King was further ordered to sell two parcels of real property, his only remaining assets, to satisfy his debt to Mrs. Seville. Mr. King unsuccessfully appealed the order, and Your Honorable Court upheld our decision in an Opinion filed October 19, 2019.

Throughout 2020, the parties attempted to effectuate a sale of one of the properties, located on Sheepskin Hollow Road in Dublin Township, Fulton County ("The Sheepskin Hollow Property.")[2] Due to both the miscommunication between and non-cooperation of the parties, a negotiated sale of the Sheepskin Hollow Property fell through. Mrs. Seville filed a motion with this court to enforce its October 24, 2018, decision. We held hearing on the motion in February and March of 2021. Thereafter, we issued an Order on March 17, 2021, from which Mr. King now appeals.

Using its broad equity power and jurisdiction afforded by 23 Pa.C.S. § 3323(f), this court determined to supervise the sale of the Sheepskin Hollow Property. Consequently, we ordered the following:

    a. A realtor who had prior involvement with the property and known to the parties, Ronald Richards, was appointed to serve as the listing agent for the Sheepskin Hollow Property and ordered to market the property in accordance with his expertise and discretion.

    b. Due to Defendant's incarceration, Plaintiff was ordered to arrange for the inspection of the property's septic system in order to secure a certificate in order to list the property for sale.

---

[1] The marriage separation agreement specifically provided that "the breaching or wrongdoing party shall bear the obligation of any and all costs, expenses or counsel fees incurred by the non-breaching party." *See* October 24, 2018 Order.

[2] This property has also been referred to as "the Dublin Property" in other filings and proceedings.

2

c. The parties were required to submit the names of two suggested appraisers to appraise the property for the purpose of determining the listing price for the property. Plaintiff, again due to Defendant's incarceration, was to be responsible for contacting the appraiser and effectuating the appraisal.

d. The parties were ordered to accept the first offer on the Sheepskin Hollow Property that is within ninety percent (90%) of the asking price.

e. Following the sale, the proceeds were ordered to satisfy fifty percent (50%) of the Plaintiff's expenses in arranging for the inspection and the appraisal. A second portion of the proceeds was ordered to satisfy any other fees or expenses incurred by the sale of the property.

f. Following the distribution of expenses, the next $36,143.67, plus interest at the prime rate of 3.25% per annum from October 24, 2018, was to be distributed to the Plaintiff to satisfy thisc Order of October 24, 2018.

g. Any proceeds remaining after the distribution to the Plaintiff were to be distributed to Plaintiff and Defendant equally.

Mr. King's appeal arises entirely from this March 17, 2021, Order. Mr. King filed his notice of appeal to the Superior Court on April 12, 2021, and was due to supply his Concise Statement by May 12, 2021. Mr. King filed his *Concise Statement* on May 19, 2021. Having considered the Mr. King's *Concise Statement*, this matter is now due for review.

## III. TIMELINESS

First, we must address the timeliness of Mr. King's *Concise Statement*. Mr. King's *Concise Statement* was due on May 12, 2021, but was not filed until May 19, 2021. In the first paragraph of his *Concise Statement*, Mr. King states that he did not receive a copy of this court's

3

Order pursuant to Pa. R.A.P. 1925(b) directing him to file a statement of errors complained of on appeal. Mr. King further attaches a copy of a May 14, 2021 letter to the Fulton County Prothonotary claiming not to have received such an order, but stating that, due to his past appeal, he knew that a *Concise Statement* should have been ordered.

Following the filing of this appeal, this court issued an order on April 21, 2021, which directed Mr. King to request any required transcripts and submit the required payment. Mr. King did so. The April 21, 2021 Order did not direct Mr. King to file a *Concise Statement.*

In Pennsylvania, the failure to timely file a concise statement results in a waiver of any claims on appeal. However, noncompliance may be excused if the trial court order directing the filing of a Rule 1925 concise statement fails to comply with the language in Rule 1925(b)(3)(iii) and Rule 1925(b)(1)." *See e.g. Berg v. Nationwide Mut. Ins. Co.*, 607 Pa. 341, 6 A.3d 1002 (2010); *Commonwealth v. Bush*, 2018 PA Super 271, 197 A.3d 285 (2018). Because this court's Order dated April 21, 2021, did not direct Mr. King to file a Concise Statement, and because there were no other orders relating to this appeal, Mr. King's *Concise Statement* was filed on his own volition and must be considered timely.

## IV. <u>RIPENESS</u>

The March 17, 2021 Order was not a final order for the purposes of Pa. R.A.P. 341, as it neither disposed of all claims and of all parties, nor was it entered as a final order pursuant to Pa. R.A.P. 341(c). Therefore, this is an interlocutory appeal under Pa. R.A.P. 311. Pennsylvania Rule of Appellate Procedure 311(a)(2) states that an appeal may be taken as of right and without reference to Pa. R.A.P. 341(c) from "an order confirming, modifying, dissolving, refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter

4

affecting the possession or control of property, **except for orders pursuant to 23 Pa.C.S. §§ 3323(f)**, 3505(a)."

The March 17, 2021 order was plainly issued pursuant to 23 Pa.C.S. §§ 3323(f), and therefore is not appealable until final disposition of the case. Therefore, Mr. King's appeal should be quashed.

## V. ISSUES RAISED

Mr. King makes four claims in his *Concise Statement*, each claiming that his Fifth Amendment Due Process rights were violated. According to Mr. King, his rights were violated when the court:

a. Took over supervision of the sale of the Sheepskin Hollow Property;

b. Ordered the Plaintiff to organize the appraisal and septic test;

c. Ordered equal distribution of the final proceeds on the sale after all debts were settled; and

d. Ordered the Plaintiff to receive interest on the $36,143.67 owed to her following the October 24, 2018 Order.

## VI. DISCUSSION

The Pennsylvania Superior Court has explained the broad equity powers afforded to a trial court under 23 Pa.C.S.A. § 3323(f), writing:

> Section 3104(a), Jurisdiction, provides that in divorce matters, the trial court may "issue appropriate decrees or orders" with respect to spousal support, alimony, APL, and "[a]ny other matters pertaining to the marriage and divorce ... authorized by law and which fairly and expeditiously may be determined and disposed of in such action." 23 Pa.C.S.A. § 3104(a)(1), (a)(5). Similarly, one can glean the legislative intent by viewing section 3323(f) of the Divorce Code. Section 3323(f) expressly authorizes the court to enter orders requiring either party to act or refrain from acting as equity and justice require. 23 Pa.C.S.A. § 3323(f).

5

Thus, since the court has personal jurisdiction over the parties to the divorce action, section 3323(f) is a catch-all provision, granting not only broad enforcement powers, but "full equity and jurisdiction" to issue orders necessary to protect the interests of the parties and effectuate economic justice and insure the fair and just settlement of the parties' property rights. 23 Pa.C.S.A. § 3323(f).

*Annechino v. Joire*, 2008 PA Super 50, 946 A.2d 121, 124 (Pa. Super. 2008).

All four of the court's actions in the March 17, 2021, Order with which Mr. King takes issue were properly ordered through our broad enforcement powers as set forth in 23 Pa.C.S. § 3323(f). They were also necessary to protect Mrs. Seville's interests, to effectuate economic justice, and to insure the fair and just settlement of the parties' property rights. Lastly, they were necessary to enforce this court's prior orders.

**a.      The undertaking of supervision of the sale by the Court.**

At the hearing on March 9, 2021, the court heard testimony from Ronald Richards regarding the prior attempt to sell the Sheepskin Hollow Property. Mr. Richards testified that he had been a real estate broker for thirty-two (32) years[3], and that he had been involved in the initial listing of the Sheepskin Hollow Property pursuant to court order.[4] Mr. Richards testified that he felt the initial listing price of $79,000.00 was too high, but that agreed to list at that price following a conversation with Mr. King and Mr. King's Power of Attorney, Daniel Sipes.[5] Mr. Richards further testified that he felt the appropriate listing price was $60,000, and that he did receive one offer for $60,000, but it fell apart for reasons unknown to him.[6] Mr. Richards also testified that, in all of his dealings with Mrs. Seville, she had been cooperative, and that she had agreed to a sale price of $60,000.[7] On cross-examination, Mr. Richards testified that he believed

---

[3] *Transcript of Proceedings of Petition to Enforce Court Order*, February 9, 2021 ("T.P., 2/9/2021"), at 8, ln. 4-6.
[4] *Id.* at 9, ln. 8-10.
[5] *Id.* at 10, ln. 14-24.
[6] *Id.* at 14, ln. 11 to p.15, ln. 1.
[7] *Id.* at 15, ln. 8-13.

6

Mr. Sipes had made a counter-offer.[8] Mr. Richards also testified that, because he could not "get cooperation to get it sold", he no longer wanted to be involved in the sale of the property after the listing expired.[9]

Following this testimony, as well as testimony from the February 9, 2021, hearing, it became clear to the court that this property would not be sold without court intervention to oversee the sale. Following the February and March hearings, and after observing the demeanor of the litigants and making our credibility determinations, we attributed the failure of the sale of the property primarily to Mr. King. Mr. King apparently had a different view of what constitutes a fair asking price, and apparently instructed Mr. Sipes to negotiate away from a fair offer. Where Mrs. Seville was fully cooperative in the attempts at sale, Mr. King was not. In order to protect the interests of the parties, effectuate economic justice, and insure the fair and just settlement of the parties' property rights, the court believed it necessary to supervise the sale.

**b.     The requirement for Plaintiff, rather than Defendant, to arrange the septic system inspection and appraisal.**

Mr. King stated incorrectly in his *Concise Statement* that the March 17, 2021, Order allows Mrs. Seville "control" over ordering the appraisal and the septic test. The March 17, 2021, Order did not give any level of control to Mrs. Seville over the appraisal and septic test. This court ordered Jason Ramsey Septic Service to complete the inspection of the septic system and ordered the parties to submit two suitable appraisers each, and we would select an appraiser from that list. In other words, neither Mr. King nor Mrs. Seville have any substantive control over the choice of the appraiser nor the septic system inspection. Mrs. Seville, as part owner, and

---

[8] *Id.* at 25, ln. 24.
[9] *Id.* at 13, ln.. 24 to p. 14, ln. 3.

the only owner at liberty, is merely responsible for ensuring they take place and making the initial payment for them.

The reason for Mrs. Seville's involvement at this level was Mr. King's repeated assertion of his own indigence and apparent inability to pay the fees for the appraisal and septic inspection.[10] Thus, the March 17, 2021, Order required Mrs. Seville to pay for the appraisal and septic system test, which in turn necessarily requires her to be at least somewhat involved in the inspection and appraisal process. Furthermore, the Mr. King is currently incarcerated and is acting on this matter through Mr. Sipes.[11] Mr. King's incarceration and claims of indigence have proven, at every juncture, to be an obstacle in effectuating this sale. This decision by the court is not meant to occlude Mr. King from being involved in the sale of the property. It is merely meant to allow for scheduling to effectuate of two critical actions necessary for even listing this property for sale which we have has already ordered must take place.

c. **The equal distribution of proceeds after all debts are settled.**

The Sheepskin Hollow Property was ordered to be sold on October 24, 2018, to pay a debt incurred by Mrs. Seville due to Mr. King's failure to abide by the marriage settlement agreement and continue payments on a line of credit. Mrs. Seville testified at the original hearing that she had not been presented with a deed to sign for the Sheepskin Hollow Property, whereas Mr. King claimed that she had "unclean hands" for failing to sign. After hearing the parties testify and following a credibility determinations, this court found that Mr. King had failed to

---

[10] *Id.* at 61, ln. 5-9; 62, ln. 3-15.
[11] Mr. King has three persons designated as his Power of Attorney, but Mr. Sipes has been handling the majority of the sale of this property on Mr. King's behalf.

ever produce for Mrs. Seville a deed to sign.[12] The record supports this factual determination, and it was upheld by the Superior Court.[13]

Mr. King's failure to abide by the marriage settlement agreement resulted in significant economic loss to Mrs. Seville. Mr. King's failure to present the deed to Mrs. Seville resulted in Mrs. Seville retaining both ownership and responsibility over the Sheepskin Hollow Property, as she is still named on the deed. According to realtor Mr. Richards, "When her name is on the deed, she's considered part owner."[14]

Therefore, Mrs. Seville owns half of the Sheepskin Hollow Property. Her name is on the deed, therefore she has a right to be involved in the sale. This is entirely the result of Mr. King's failure to abide by the marriage settlement agreement. Because Mrs. Seville's interest in the Sheepskin Hollow Property is equal to Mr. King's, Mrs. Seville is responsible for fifty-percent (50%) of the costs associated with the sale of the property, and she is entitled to fifty-percent (50%) of the proceeds of the sale after debts are paid.

### d. The interest on the original $36,143.67, beginning October 24, 2018.

Mr. King was ordered to sell the Sheepskin Hollow Property on October 24, 2018. It is now May of 2021, two-and-a-half (2 ½) years later. As discussed above, it was at least in part due to Mr. King's failure to accept a suitable asking price for the property and his lack of cooperation throughout this proceeding. We find that Mr. King has been deliberately obstructing the sale of this property because he does not want to pay Mrs. Seville the money he owes her. As such, this court found that requiring Mr. King to pay a fair amount of interest on his debt is

---

[12] *See* October 24, 2018 Order.
[13] *See* Superior Court Opinion, August 29, 2019, at 5.
[14] T.P., 2/9/2021 at 24, ln. 1.

necessary to effectuate economic justice and insure a fair and just settlement of the parties' property rights.

## VII.   **CONCLUSION**

Based on the above reasoning, we submit that this court did not err as set forth in Mr. King's *Concise Statement*. We furthermore submit that Mr. King's appeal should be dismissed as it is not ripe for review. Therefore, this court respectfully requests that its decisions in these matters be affirmed. The record in this matter will be transmitted to the Superior Court concurrent with this Opinion.